## NEW YORK OYER AND TERMINER.

### September, 1851.

Before Edmonds, Justice, and two aldermen.

### The People v. Ellen Doyle.

The act which perpetrates the homicide (where there is no intention to kill), where it is imminently dangerous to others, evincing a depraved mind regardless of human life, need not be accompanied by a design to take life in order to constitute murder.

The prisoner was indicted for murder. She was an Irishwoman, and addicted to the use of liquor. She and her husband occupied rooms in a tenement house, where were four or five other families. She was of a violent, bad temper, and quarrelled with other occupants of the building because they would not associate with her.

One day one of the other inmates was washing in the hall of the building, when the prisoner came out of her room and used abusive language toward her. Receiving no return to her abuse, she went into her room, took from her fire a pot in which she was cooking a meal for her husband, and poured the soup, which she was boiling, upon the washerwoman and two children that were near her, scalding them badly. This called out into the hall the mother of the children, and a friend of hers, the deceased. They remonstrated with her for her violence, and she, exclaiming "damn you, here's something for you," threw the iron pot among the three women and two children who were on the landing below her. ·

The pot struck the deceased on the top of her head, one of its legs penetrated her skull, broke off there, and the pot fell on the floor and broke to pieces. She then rushed to the wash tub, and with great violence of language and action, tore the clothes to pieces, and then retired to her own room.

The deceased was taken to the police station, and thence to

the hospital, where the leg of the iron pot was taken from her head. She was trephined, and several pieces of the bone of the skull were removed, but the fracture extended through the skull, the covering of the brain was torn, and some of the brain protruded. In a few days she died.

On the trial the counsel for the prisoner insisted —

1. That the declarations of the prisoner, made after her arrest, could not be given in evidence to show a depraved mind regardless of human life.

2. That the act perpetrating the homicide, though imminently dangerous to others, evincing such a state of mind, could not be evidence of murder unless there was intention to effect the death of some one.

Upon the first point the judge ruled that any act or declaration of the prisoner (not under undue influence), before or after the commission of the offense, that was calculated to show an habitual depravity of mind regardless of human life, might be given in evidence, because from that the jury might legitimately infer such a mood of mind as characterizing the act complained of.

And, on the second point, he charged the jury that there need not to have been an intention to effect the death of any person. The counsel for the prisoner had supposed that the statute defining murder had demanded that someone's death had been designed by the imminently dangerous act, though it mattered not who. But that was not so; there need not be a design to effect death at all. It was enough that the act was thus dangerous, evincing a depraved mind, and a disregard for human life generally.

The prisoner was convicted of manslaughter in the second degree.

[NOTE.—When the prisoner was put to the bar to receive sentence, and was asked the usual question, what she had to say why sentence should not be pronounced against her, her counsel replied that all she was desirous of saying was, that she was some three months advanced in pregnancy, and had a family of five children entirely depending on her for support, as there

was no reliance upon her husband, who, during her trial, became so intoxicated, when he was sent by her counsel for witnesses, that he was obliged to be turned out of the court-room.

The judge said the court had not overlooked all those considerations, but the prisoner had placed herself in her present unfortunate position, by the intemperate indulgence in intoxicating liquors, and thus rendered it necessary for the good of the community that she should be made an example of. She was now to be withdrawn for a long time from her children, for whom she seemed to have some affection, and who will fare much better under the care of our public charities than if brought up under the nurture of a drunkard and a homicide. She was sentenced to five years in the State prison.]